Filed 10/8/20  In re J.M. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | B305168 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.M.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. YJ40022) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Nancy Newman, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

The minor J.M. appeals the sustaining of a petition and declaration of wardship for robbery (Pen. Code, § 211), which was alleged in one of five wardship petitions filed between March and November 2019, pursuant to Welfare and Institutions Code section 602. The allegations in the petitions included grand theft, robbery, assault with a firearm, battery upon a custodial officer, firearm and gang allegations, and vandalism, among other charges. Appellant admitted some counts, and others were dismissed. The robbery allegation was sustained following a contested adjudication hearing. J.M. contends his conviction is not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2019, Diana G. was approached by two boys as she was sitting on a bench at the Farmdale train station, texting and listening to music. The first boy demanded her phone. The second boy, appellant, was standing slightly behind the first boy, to Diana G.'s right.

The first boy snatched Diana G.'s phone from her hand and started riffling through her backpack. He had a gun tucked in his waistband. He tried to take the laptop from Diana G.'s backpack, and shoved her a couple times. Appellant demanded cash from Diana G. The first boy asked for the password for Diana G.'s phone. When she did not immediately respond, the first boy pointed a gun at her face. Both boys ran off when a train approached the platform.

The robbery lasted approximately two minutes. Diana G. saw both boys' faces. They looked very young, and had round "baby-like" faces. Appellant was wearing a black long-sleeved hoodie, and the other boy was wearing a white undershirt. Diana G. believed the boys were 14 or 15 years old.

2

Diana G. called 911 from an intercom at the station. Police arrived within five to 10 minutes. They showed her a photograph of two suspects on a phone. The pictures were blurry, and she could not identify the perpetrators.

Diana G. went to the police station a couple of days after the incident, and met with Detective Michael Lanza. He showed her a six-pack photographic lineup, explaining that she may or may not recognize someone from the photos. On the "Photo Identification Report" appended to the lineup, Diana G. wrote that appellant was the person who "stood on the right/back of the other boy who had a gun. He was a bit more cautious than the boy in front—but he demanded my wallet and then demanded cash. He did not stand directly in front of me." She circled the photograph of appellant. Diana G. had a fresh memory of the incident at the time she made the identification, was honest in making her identification, and was not pressured to identify anyone.

At the adjudication hearing, Diana G. identified appellant as one of the two boys who robbed her. During cross-examination, Diana G. admitted it was hard for her to distinguish between the two boys because they looked very similar. After looking at the photographic lineup for a couple of minutes, she felt that appellant "might be him." She believed appellant was 13 or 14, and none of the other boys in the lineup looked that young. Appellant's features stood out to her. She had a better memory of appellant's face when she identified him in the photographic lineup at the police station than she did at the adjudication hearing.

Detective Lanza testified that Diana G. identified appellant in the lineup. Detective Lanza did not assemble the photo lineup and did not know who was the suspect in the lineup. He only knew it was a robbery investigation.

Detective Nathan Baez assembled the photo lineup shown to Diana G. He used the Los Angeles County booking photo system to search for photos similar to the booking photo of appellant. In selecting the pictures to use, the detective picked juveniles in dark shirts and with similar hair styles. Appellant was 13 years five months old when his photo was taken. The other boys depicted in the lineup were 14 and one-half, 15 and one-half, 15 years 10 months, 16 years nine months, and 17 years 10 months old. Detective Baez included appellant in the photo array because appellant was recently arrested for a different robbery at the same train station, which involved multiple juveniles and the theft of a phone.

The day after Diana G. identified appellant in the photo lineup with detective Lanza, she met Detective Baez at a coffee shop to see if she could identify the other suspect from a photo lineup. She was unable to make an identification; none of the pictures looked like the other boy with the gun.

Diana G. admitted that she was afraid to come to court for fear of being retaliated against for participating in the case.

The court found the robbery allegation to be true, and committed appellant to a suitable placement with a maximum term of confinement of eight years, consisting of five years for the robbery, plus additional time for the other crimes which appellant admitted to be true. Appellant timely appealed.

## DISCUSSION

Appellant contends the evidence was insufficient because "[t]here was not a single witness able to positively identify appellant with certainty as the perpetrator. There was no physical evidence or corroborating evidence, linking appellant to the offense, and there was no video recording of the incident." However, the identification "by a single eyewitness may be sufficient to prove the

4

[appellant's] identity as the perpetrator of a crime. . . . Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the [appellant's] guilt even if the witness does not confirm it in court. . . . Indeed, 'an out-of-court identification generally has greater probative value than an in-court identification, even when the identifying witness does not confirm the out-of-court identification: "[T]he [out-of-court] identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind." ' " (*People v. Boyer* (2006) 38 Cal.4th 412, 480, citations & italics omitted.)

Substantial evidence supports appellant's conviction here. Diana G. clearly identified appellant in the pretrial photo lineup. Her statement appended to the lineup unequivocally identified appellant as the perpetrator. While her trial testimony was less certain, testifying appellant "might be" the perpetrator, and that she told Detective Lanza the photograph "might be" the perpetrator when she made her identification, this may have been due to her fear of retaliation for testifying in court. The trial court observed Diana G. "was a very credible witness [and] [t]he fact that she could not make an I.D. on the second six-pack does speak to her truthfulness and desire not to make any type of a wrong identification."

Appellant also contends the photographic lineup was unduly suggestive, violating his right to due process, because it contained only one young boy fitting Diana G.'s description, and the other boys depicted in the lineup were older. Appellant did not object to the photographic lineup on this basis (or any other) in the trial court.

The contention lacks merit.  To determine whether a photographic identification procedure was so unreliable as to violate an appellant's due process rights, the court must consider: " ' "(1) 'whether the identification procedure was unduly suggestive and unnecessary,' and, if so, (2) whether the identification was nevertheless reliable under the totality of the circumstances." ' [Citation.]" (*People v. Gonzalez* (2006) 38 Cal.4th 932, 942.)  When determining whether an identification was unduly suggestive, the question is whether anything caused appellant to stand out from the others in a way that would suggest the witness should select the appellant.  (*People v. Cunningham* (2001) 25 Cal.4th 926, 989-990.)

We have reviewed the photographic lineup and do not find it to be unduly suggestive.  To the contrary, all six individuals are young black males, with similar hair styles and skin tones, wearing black shirts or sweatshirts.  Two of the boys (appellant and the boy in picture 4) are very young, while the other boys appear slightly older, but all the boys are clearly teenagers.  Appellant's picture does not stand out from the others in a way that would cause the victim to select him.  (*People v. Johnson* (1992) 3 Cal.4th 1183, 1217.)  Detective Lanza could not have influenced Diana G. because he did not assemble the photographic lineup and did not know which if any of the boys was suspected of committing the robbery.

**DISPOSITION**

The judgment is affirmed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.          STRATTON, J.

6